UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BMC, LLC,

                           Plaintiff,                              **Hon. Hugh B. Scott**

                                                                        04CV105A

                                                                   **Decision & Order**
                       v.                                                 **and**
                                                                   **Report & Recommendation**

Verlan Fire Insurance Company,

                                    Defendant.



        Before the Court is the defendant's motion to compel discovery (Docket No. 26);

plaintiff's cross-motion for discovery, partial summary judgment and a protective order. (Docket

No. 29).


                                    **Background**

        This case revolves around the amount to be paid to BMC, LLC (""BMC") under an

insurance policy issued by Verlan Fire Insurance Company ("Verlan") for a loss sustained on

property located at 80 French Road in Cheektowaga, New York.

        On January 25, 2001, Verlan issued a comprehensive property damage insurance policy

(#M001463-01) ["the Policy"] to BMC relating to the property at issue.  The property was

damaged due to heavy snowfall on January 10, 2002.  It is undisputed that the covered property

                                       1

sustained an insured loss, but the parties dispute the amount of the loss.  BMC contends that the

loss amounted to $1,172,050.44.  Verlan calculated the loss at $ 426,705.71.  After brief legal

proceedings, pursuant to the terms of the policy, the parties agreed to engage Philip Frandina,

P.E. to act as an umpire to determine the extent of the loss.  On February 5, 2004, Frandina

issued his decision as to the amount of loss, finding that BMC's loss was $570,386.46.  BMC

subsequently commenced this action alleging a single breach of contract claim based upon

Verlan's refusal to pay BMC  $1,172,050.44 as the amount of the loss.  BMC's Amended

Complaint asserts two causes of action: the first, claiming that Verlan failed to pay for the loss as

required under the Policy; and the second, seeking the vacatur of the umpire's award.

## Discussion

### Repair / Replacement of Roof

Verlan seeks to compel BMC to provide responses to Verlan's first request for the

production of documents.  More specifically, Verlan seeks documents relating to the repair

and/or replacement records for the roof of the subject property.  After the appointment of

Frandina as umpire, the parties each selected an appraiser.  Verlan selected James Gauthier, Esq.

and BMC selected George Pearlman, P.E.  During his appraisal, Gauthier learned that BMC had

undertaken to complete certain repairs to the roof.  Guathier requested the records relating to that

roof repair.   Verlan contends that it is entitled to the records under Article 12 of the policy at

issue, which states in part: "in the event of a loss [Verlan] shall have the right to review the

books, records, and other relevant materials maintained by [BMC] and/or [its] appointed

2

representative."   Verlan also points to Article 13 of the policy which states that BMC "shall

provide [Verlan] with such information, assistance and cooperation as we and/or our counsel or

appointed adjuster may reasonably request."  Finally, Verlan cites to Article 11 of the policy

which states, in part, that Verlan's liability under the policy "shall not exceed ... the amount

actually and necessarily expended in replacing said property or any part thereof." (Docket No. 26

at ¶ 11).  Verlan also seeks to compel the non-party who performed the roof repair, Lamparelli

Construction Co. Inc. ("Lamperelli"), to respond to a subpoena for this same information served

upon it on April 28, 2006.

BMC argues that it is entitled to the "actual cash value" of the loss.  In this regard, BMC

draws a distinction between the words "repair" and "replace."   BMC argues that it only

"repaired" the roof, and did not "replace" the roof.  Under this parsing, BMC contends that

Article 11 of the policy – which talks about replacement costs – does not apply. (Docket No. 33

at page 6-7).  The Court is not persuaded by the argument that the costs of repairing the roof have

no relation to the policy or to the actual cash value of replacing the roof. Verlan argued, and

BMC did not dispute, that the work done to the roof in question included the removal of the old

roofing material and steel trusses that had buckled under the weight of the snow, and the

installation of new steel trusses and roofing material.[1]  Verlan argues that the removal of the old

materials and the installation of the new materials constitute a "replacement" of the roof under

the policy.  Although BMC argues that under the policy, the term "replacement" is a term of art,

---

[1]   Indeed, Verlan asserts, and BMC does not dispute, that during the appraisal process
Verlan learned that the old steel trusses did not comply with the applicable building codes.  The
new steel trusses comply with the code. Thus, Verlan asserts, the new roof is a much better roof
than the one it replaced.

the record reflects that the parties have been using the terms "replacement" and "repair" interchangeably.  BMC has failed to present authority which would support a conclusion that the removal of the old roofing material and trusses and the installation of the new roofing material and trusses does not constitute a "replacement" as contemplated under the policy.   In other words, BMC has not demonstrated that, in the instant case, the repair and the replacement were not one and the same.  In any event, the "value" of the roof is influenced by the cost of the new trusses and materials used in the repair or replacement, however one chooses to characterize it.

In any event, BMC's reliance on <u>Smith v. Providence Washington I.N.S.. Co.</u>, 51 A.D.2d 1074 (3rd Dept. 1976) is misplaced.   In that case, the Court granted a protective order precluding the insured from having to disclose income tax statements for three years prior to a fire which destroyed a covered building. There, the decision of the Court hinged on the fact that the record sought were tax returns.  <u>Smith</u>, 51 A.D.2d at 1075 ("While the present trend is one of liberality in granting discovery, our courts do not favor the disclosure of income tax returns, absent a strong showing of necessity or desirability.").   The Court is also not persuaded by BMC's argument that Verlan's request for the documentation during the appraisal was invalid as coming after Verlan denied all or part of its claim.  Under the policy, Verlan is entitled to seek records relating to the claimed loss.  Neither the request for these records, nor reliance upon policy terms which allowed for arbitration of the value of the loss, constitute a repudiation by Verlan of its liability under the policy.  In this regard, BMC's reliance upon <u>Beckley v. Ostego County Farmers Coop. Fire. Ins. Co.</u>, 3 A.D.2d 190 (3rd Dept. 1957) is also misplaced.   In <u>Beckley</u>, Farmers accused the insured of arson and had Beckley arrested.  Farmers thereafter repudiated any liability under the policy.  While the charge was pending, Farmers sought to take Beckley's

deposition.  His attorney refused to produce him on the grounds that the insurance company had

already repudiated its liability under the policy.  Beckley was subsequently tried and acquitted of

the arson charge.  After the acquittal, he brought suit against Farmers for payment under the

policy.  At that point, Farmers attempted to deny liability on the grounds that Beckley had

previously refused to be examined.  Thus, the facts in <u>Beckley</u> are inapposite to the case at hand.

Indeed, in <u>Beckley,</u>  the Court found that Farmers could still take Beckley's deposition under the

applicable civil discovery rules. <u>Beckley</u>, 3 A.D.2d at 195.

    The Court need not further interpret Article 11 of the policy with respect to the pending

motion.  For purposes of discovery in this matter, Verlan is entitled to the information and

documentation relating to any repairs or replacement of the roof in question by BMC or its

agents or contractors.

    Although BMC seeks to quash the subpoena served upon Lamperelli, no actual notice of

appearance has been filed on behalf of Lamperelli.  During oral argument, counsel for BMC

stated that he was authorized to represent Lamperelli with respect to the subpoena issue.   In any

event, no basis to quash the subpoena has been presented and the motion is denied.  Both BMC

and Lamparelli are directed to respond to the discovery requests seeking information relating to

the cost of repairing the roof in question ***within 10 days of this Order.***

    Verlan seeks the costs of attorneys fees associated with bringing the instant motion to

compel. Rule 37(a)(4)(A) provides that "[if] the motion [brought under Rule 37] is granted or *if*

*the disclosure or requested discovery is provided after the motion was filed*, ***the court shall,*** after

affording an opportunity to be heard, require the party or deponent whose conduct necessitated

the motion or the party or attorney advising such conduct or both of them to pay to the moving

party the reasonable expenses incurred in making the motion, including attorney's fees, *unless* the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection *was substantially justified,* or that other circumstances make an award of expenses unjust."

It is undisputed that Verlan requested the information relating to the cost of repairing the roof on more than one occasion. Although, BMC argues that Verlan's counsel's change in employment added to the delay, BMC does not articulate how this forms a basis for its failure to respond to the discovery request.  Further, BMC also points to the fact that Verlan has not issued its expert report in compliance with the Scheduling Order, as somehow mitigating its failure to produce the records at issue.[2]  Once again, BMC has not articulated a nexus between Verlan's failure to issue the expert report and BMC's failure to respond to the discovery demand.   The Court finds that BMC was not substantially justified in failing to respond to the request.  BMC is directed to pay Verlan's reasonable attorneys fees and costs associated with bringing the instant motion under Rule 37.  On or before October 13, 2006, Verlan shall submit an affidavit setting forth a contemporaneous record of the fees and costs associated with bringing the motion.  BMC may respond to the affidavit by October 27, 2006.  The fee request will be determined without oral argument unless otherwise determined upon review of the papers.

---

[2]   In the instant motion, Verlan sought an extension of time to file an expert report. Verlan argues that it cannot issue a proper expert report until it obtains the repair/replacement information relating to the roof.  The Court will address the request to modify the Scheduling Order below.

**Partial Summary Judgment**

BMC seeks partial summary judgment in the amount of $143,680.75; the difference between what Verlan has already paid BMC for the loss and the amount assessed by Frandina. In support of this motion, BMC argues that Verlan does not dispute any part of Frandina's report. During oral argument, Verlan represented that it did dispute portions of the umpire's report, but that those issues are not relevant in this action because Verlan considers the Frandina's report to be binding. In any event, Verlan asserts that BMC's failure to provide information requested by Verlan under the terms of the insuring agreement may constitute a material breach of the terms of the agreement barring BMC from any recovery under the policy.[3] The Court need not determine whether BMC's failure to produce the requested information constituted a material breach under the policy at this time.[4] However, this issue precludes the entry of judgment as requested by BMC. Further, it appears undisputed that even if BMC is successful in having the Court vacate Frandina's award, the remedy would be a new appraisal. Thus, BMC is not entitled to a money judgment at this time.

Based on the above, it is recommended that BMC's motion for partial summary judgment be denied without prejudice.

**Modification of the Scheduling Order**

---

[3]   The record reflects that in a letter dated December 2, 2003 Verlan advised BMC that it may consider BMC's failure to produce the requested information as being a material breach of the policy. (See Affidavit of Joseph J. Manna, dated August 31, 2006, at Exhibit A).

[4]   It does not appear that the record had been fully developed with respect to this issue at this time.

7

Verlan seeks a modification of the Scheduling Order to extend its time for filing an expert report in this case.[5]  It appears that the information relating to the actual cost of repairing or replacing the roof may be useful to Verlan's expert in rendering an opinion in this matter. The parties have not identified any further discovery remaining to be completed in this case. The following dates shall apply:

1.  The defendant shall serve its expert report *within 30 days of receipt of the repair/replacement cost information* directed to by disclosed by this Order;

2.  Dispositive motions, if any, shall be filed no later than **December 16, 2006.** Such motions shall be made returnable before the Magistrate Judge.

3.  No extension of the above cutoff dates will be granted except upon written application, filed prior to the cutoff date, showing good cause for the extension. Moreover, if counsel are of the belief that an intermediate conference with Judge Arcara or Magistrate Judge Scott would be of assistance in the prompt disposition of the case, such a conference will be scheduled upon application of any party. A final pretrial conference pursuant to Fed.R.Civ.P. Rule 16(d) and Local Rule 16.1(j) will be scheduled by Judge Arcara.

## Conclusion

Based on the above, Verlan's motion to compel discovery, modify the scheduling order and awarding of costs and fees associated with bringing the motion (Docket No. 26) is granted. To the extend, BMC sought to limit discovery or quash the subpoena served upon Lamperelli (Docket No. 29), the motion is denied.

To the extent that BMC sought partial summary judgment, it is recommended that the motion be denied without prejudice.  Pursuant to 28 USC §636(b)(1), it is hereby ordered that

---

[5]  The plaintiff has already served its expert report in this matter.

this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 USC §636(b)(1), Fed. R. Civ. P. 72(b) and WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District**

**Court's refusal to consider the objection.**

So Ordered.

_____/s/  Hugh B. Scott_____

United States Magistrate Judge

Western District of New York

Buffalo, New York

September 26, 2006

10