UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BMC, LLC,

Plaintiff,

v.

Verlan Fire Insurance Company,

Defendant.

**Hon. Hugh B. Scott**

04CV105A

**Decision & Order**

Before the Court is the plaintiff's motion for reconsideration (Docket No. 44) of this Court's September 26, 2006 Decision & Order and Report & Recommendation relating to the defendant's motion to compel discovery (Docket No. 26) and plaintiff's cross-motion for discovery, partial summary judgment and a protective order. (Docket No. 29).

**Background**

This case revolves around the amount to be paid to BMC, LLC (""BMC") under an insurance policy issued by Verlan Fire Insurance Company ("Verlan") for a loss sustained on property located at 80 French Road in Cheektowaga, New York. The Court refers to its September 26, 2006 Decision & Order for a more full recitation of the underlying facts.

## Discussion

The primary issues raised in the instant motion relate to the Court's Decision & Order on Verlan's motion to compel discovery. More specifically, the plaintiff seeks reconsideration of the Court's September 26, 2006 Decision & Order which awards expenses to Verlan based upon BMC's failure to produce the roof repair records. In support of this application, BMC argues that the award of expenses was not warranted because (a) Verlan served its responses to BMC's discovery after Verlan made its motion to compel BMC's discovery response; (b) Verlan failed to respond to certain email messages sent by counsel to BMC; (c) each of the parties had granted the other extensions relating to discovery in this matter; and (d) because Verlan failed to produce certain expert discovery, BMC's failure to produce the records was substantially justified. (Docket No. 45 at page 1). Many of these arguments are similar to those previously asserted by BMC in this matter. The Court does not agree with BMC's main premise that Verlan's delay in responding to BMC's discovery requests provides a proper basis for BMC's refusal to comply with its own discovery obligations in this case. If Verlan did not adequately respond to BMC's discovery requests, BMC was entitled to move to compel any such discovery, BMC was not entitled to refuse to comply with its own obligations under the Federal Rules of Civil Procedure. In any event, BMC has not demonstrated any factual connection between Verlan's dilatory discovery response and BMC's refusal to disclose the sought after records. Indeed, to the contrary, BMC's main argument for failing to disclose the sought after records was that the records were not relevant to the issues in this action. The Court concluded that the plaintiff was not substantially justified in that regard.

The Court is also unpersuaded by the plaintiff's argument that it refused to produce the

documents in an effort to narrow the scope of the litigation inasmuch as Verlan did not dispute the Umpire's award. (Docket No. 45 at page 6). At the very least, the documents are relevant to BMC's claim in this matter that the Umpire's award was flawed and did not reflect the actual value of the loss. In this regard, the sought after records are discoverable.[1] The plaintiff once again argues that it was justified in drawing a distinction between what constitutes a "repair" and "replacement" of the roof in question. As noted in this Court's September 26, 2006 Decision & Order, the plaintiff has failed to demonstrate a reasonable basis for this parsing of words under the circumstances in this case. The defendant contends, and the plaintiff has not disputed, that the old roof trusses and roofing material was removed; and new improved roof trusses and roofing material was installed. In this regard, the plaintiff has thus far failed to articulate a meaningful distinction between a "repair" and a "replacement" which would have substantially justified a refusal to produce the sought after records in this case.[2]

BMC also argues that the Court's September 26, 2006 Decision & Order included dicta which appears to rule on whether or not Verlan repudiated BMC's claim in this matter. The following language is at issue:

> The Court is also not persuaded by BMC's argument that Verlan's request for the documentation during the appraisal was invalid as coming after Verlan denied all or part of its claim. Under the policy, Verlan is entitled to seek records relating to the claimed

---

[1] The question of the admissibility of these records at trial is not before the Court.

[2] The Court notes that this is the second litigation in this Court arising from the damage to BMC's building, which occurred in January of 2002. The first lawsuit, Verlan v. BMC, 02CV715A, resulted in the parties' mutual selection of the Umpire whose report is the subject of this action. The valuation of damage to property caused by a storm does not typically require protracted and complex litigation. The discovery dispute in this matter is symptomatic of the posturing underlying why this litigation continues almost five years after the incident at issue.

> loss. Neither the request for these records, nor reliance upon policy terms which allowed for arbitration of the value of the loss, constitute a repudiation by Verlan of its liability under the policy. In this regard, BMC's reliance upon Beckley v. Ostego County Farmers Coop. Fire. Ins. Co., 3 A.D.2d 190 (3rd Dept. 1957) is also misplaced. In Beckley, Farmers accused the insured of arson and had Beckley arrested. Farmers thereafter repudiated any liability under the policy. While the charge was pending, Farmers sought to take Beckley's deposition. His attorney refused to produce him on the grounds that the insurance company had already repudiated its liability under the policy. Beckley was subsequently tried and acquitted of the arson charge. After the acquittal, he brought suit against Farmers for payment under the policy. At that point, Farmers attempted to deny liability on the grounds that Beckley had previously refused to be examined. Thus, the facts in Beckley are inapposite to the case at hand. Indeed, in Beckley, the Court found that Farmers could still take Beckley's deposition under the applicable civil discovery rules. Beckley, 3 A.D.2d at 195.

The plaintiff cited Beckley in support of its argument that BMC was justified in failing to produce the records at issue in this matter. The Court distinguished the facts in Beckley from the facts present in this case. BMC suggests that it may still seek to assert a repudiation theory against Verlan in this matter. Although based on the record currently before the Court it is not apparent how Beckley could support a repudiation claim in this case, the Court's determination of the motion to compel, as expressed in the September 26, 2006 Decision & Order, is limited to the discovery dispute at hand and does not reach as to any substantive repudiation claims BMC may seek to assert in this matter.

Finally, with respect to its cross-motion for partial summary judgment, BMC argues that the Court erred to the extent it stated that if the Umpire's report is invalidated in this litigation, the remedy would be a new appraisal. The plaintiff cites two cases which suggest that upon the invalidation of an Umpire's report, the matter may be litigated and need not be sent for further appraisal. This issue has not been fully briefed and the Court need not address this issue at this

time. The Court notes that the language challenged by BMC constituted a separate and additional basis for the denial of its motion for partial summary judgment. Moreover, even if the matter is to be presented to trier of fact, and not a new appraisal, BMC has failed to demonstrate that it is entitled to summary judgment in this matter. Thus, BMC's motion for partial summary judgment was properly denied.

Based on the above, BMC's motion for reconsideration and re-argument is denied.

**Award of Fees**

Pursuant to this Court's September 26, 2006 Decision & Order, Verlan seeks the award of fees and costs in the amount of $3850.87 for bringing the underlying motion to compel in this matter. This amount includes attorneys fees of $3762.00 (17.1 hours @ $220 per hour) and $88.87 in copy costs. (Docket No. 47 at ¶¶ 13-14).

BMC asserts that the $220.00 per hour rate is excessive and challenges several of the time entries submitted by Verlan in support of the application. The Court finds the requested hourly rate of $220 to be reasonable in this region given the experience of the attorney and the nature of the work perform. Awards of attorneys fees greater than $220.00 per hour in commercial litigation matters have been approved in this district. Critchlow v. First Unum Life Ins. Co. of America, 377 F.Supp.2d 337, 342 (W.D.N.Y.,2005)($250); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 189 (W.D.N.Y.,2005)($260); Sabatini v. Corning-Painted Post Area School Dist., 190 F.Supp.2d 509, 515-16 (W.D.N.Y.2001) (ranging from $120 to $235); Wylucki v. Barberio, 2001 WL 34013676, at *6-7 (W.D.N.Y.2001) ($250); McPhatter v. Cribb, 2000 WL 743972, at *3 (W.D.N.Y.2000) (ranging between $125 and $240).

BMC argues that several of the time entries submitted by Verlan are too vague and too general be awarded. See Sabatini v. Corning-Painted Post Area School Dist., 190 F.Supp. 2d 509, 521-22 (W.D.N.Y. 2001); G.M. v. New Britain Bd of Ed., 2000 WL 435577 at * 5 (D. Conn. 2000). The Court notes that several time entries are eligible. The Court agrees that several of the time entries are too general. Indeed, in many instances counsel for Verlan did not distinguish between time spent working on the motion to compel from time spent working on Verlan's response to BMC's cross-motion for summary judgment. In these instances, counsel for Verlan gives the Court his best guess as to how much time was spent on the discovery motion, and how much time was spent on the dispositive motion. For example, the entries for August 23, 25, 28, 29, 30 and 31, reflect almost 20 hours of time spent on the motions, but provide no detail as to what specific work was accomplished in those hours. (Docket No. 47, Exhibits E & F). Upon review of the papers, the Court has determined that 17.1 hours attributed to the motion to compel is excessive. The Court has determined that no more than 12 hours would have been reasonably attributed to the motion to compel. Thus, the Court awards attorneys fees in the amount of $2640.00 (12 x $220.00).

BMC also objects to Verlan's request of $88.87 for "copy costs" associated with the motion to compel. Counsel for Verlan did not provide an itemized billing for copying costs in this matter, but provides "a good faith estimate" of the copying costs attributable to the motion to compel as being $88.87. (Docket No. 47 at ¶ 14). Counsel for Verlan does not articulate the basis for deriving this figure from the total copying fees of $266.60 charged to Verlan in this matter. BMC asserts that no more than $10.00 should be assessed for copying costs related to the motion to compel in this matter. (Docket No. 49 at ¶ 6(o)). The Court agrees. The Court awards

Verlan $10.00 for copying costs associated with the motion to compel.

Thus, the Court directs that BMC pay Verlan $2650.00 in fees and costs incurred by Verlan in connection with the motion to compel in this matter.[3]

**Conclusion**

Based on the above, BMC's motion for reconsideration and re-argument is denied. BMC is directed to pay Verlan fees and costs in the amount of $2650.00.

So Ordered.

/s/ Hugh B. Scott

United States Magistrate Judge
Western District of New York

Buffalo, New York
November 16, 2006

[3] At this time, the Court denies, without prejudice, Verlan's request that the additional fees expended in responding to the instant motion be added to the fee award.